## Lewis Estate

*W. Wesley Nagle,* for accountant.
*Joseph L. Loughran,* for executors of the estate of Edwin O. Lewis.

GUTOWICZ, *J.,* June 21, 1976—This decedent died April 11, 1973, leaving a will dated January 6, 1970, which was duly probated together with a codicil thereto dated December 7, 1972. She was married at the time of her death and was survived by her husband, Edwin O. Lewis, a daughter, Leonora Coleman Cook, a son, Joseph Griswold Coleman, 3rd, and three grandchildren, William R. Bonsal, 3rd, Mary Potter Bonsal Norman, and Barbara Coleman Clark. . . .

By the terms of her will and the codicil thereto, testatrix gave her clothing and jewelry equally to her surviving children. She gave $1,000 each to The Church Farm School of Glen Lock, Pennsylvania, and the Church of the Redeemer of Bryn Mawr, Pa. She gave $25,000 to her husband, Edwin O. Lewis, and $1,000 each to his daughters, Carolyn Walton and Eleanor Lowell. She gave the balance of her estate then remaining, or residue, to her trustees hereinafter named, in trust, to pay the net income therefrom to her husband, Edwin O. Lewis, for life, with remainder over upon his death

divided into eight equal shares as follows: two shares to her grandson, William R. Bonsal, 3rd; 1 share to her granddaughter, Mary Potter Bonsal Norman; 1½ shares to her daughter, Leonora Coleman Cook; 1½ shares to her granddaughter, Barbara Coleman Cook; and two shares to her trustees in further trust to pay the net income therefrom to her son, Joseph Griswold Coleman, 3rd, for life with remainder over upon his death to his issue. She appointed Samuel W. Morris as executor and trustee for the share of her son, Joseph Griswold Coleman, 3rd.

By writing dated April 19, 1973, the surviving spouse, Edwin O. Lewis, elected to take against the will.

It is noted that Edwin O. Lewis died on September 18, 1974, and letters of testamentary were granted on September 27, 1974, by the Register of Wills of Philadelphia County to Adkins Lowell and W. Wyclif Walton.

Joseph Griswold Coleman, 3rd, died October 26, 1975. It is stated that his will has not been probated since his estate consisted almost entirely of jointly held property. He was survived by his wife, Gertrude B. Coleman, and three sons, Joseph B. Coleman, Jonathan A. Coleman, and Peter C. Coleman, all sui juris.

The accountant has taken certain positions with respect to the method of calculating and funding the one-third elective share of decedent's husband, Judge Edwin O. Lewis; with respect to the payment of death taxes; and with respect to the method of adjusting the interests of beneficiaries to whom partial distributions have been made.

Initially, it is proposed that the elective share be calculated by deducting from the gross probate es-

tate all expenses of administration, funeral and last illness, as well as debts of decedent, and then applying the fraction against the net probate estate. The recent Pennsylvania Supreme Court decision in Rittenhouse Estate, — Pa. —, 353 A.2d 404 (1976), held that an elective share is to be calculated after deduction of administration expenses. Rittenhouse, supra, while providing appellate sanction for this rule, effected no change in the practice of this county where, in Morris Estate, 1 Fiduc. Rep. 141 (1950), Judge Klein had earlier stated the rule. The more important question, therefore, is whether funeral, last illness expenses and debts should also be deducted. It has been long held that a husband is primarily responsible for his wife's funeral expenses and the expenses incident to her last illness: Waesch Estate, 166 Pa. 204 (1895). While a husband can be relieved of this duty if his wife provides a testamentary direction that her estate be responsible for such expenses, if a husband elects to take against his wife's will, it has been held that he also elects against the exonerating provision: Mitchell's Estate, 79 Pa. Superior Ct. 208 (1922). This rule has been often reiterated by this court, most recently reported in Silverman Estate, 51 D. & C. 2d 589 (1970). We are now asked to consider the impact of the Equal Rights Amendment on the existing law. Article I, sec. 28, of the Pennsylvania Constitution, titled "Prohibition against denial or abridgement of equality of rights because of sex," adopted May 18, 1971, provides as follows:

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

Accountant contends that this legislation makes sex impermissible as a criterion upon which to determine the rights and duties of persons. He cites as authority recent cases arising in the Orphans' Court Divisions of other counties of the Commonwealth: Rollman Estate, 25 Fiduc. Rep. 633 (Lanc., 1975); Rush Estate, 26 Fiduc. Rep. 212 (Northampton, 1976). Those courts held that the presumption that a husband is primarily responsible for his wife's last illness and funeral expenses is no longer valid. In Rush Estate, supra, that court concludes that, having ruled the presumption invalid, the fact of election by the husband is immaterial, as the husband is not being relieved of a legal duty by a testamentary direction to pay the funeral expenses out of the wife's estate. This court does not appear to have considered the issue thus far. Nevertheless, the presumption has been held to be likewise invalid in this county: Albert Einstein Medical Center v. Gold, 25 Fiduc. Rep 337 (1974). The present accounting shows an adjusted principal balance of $619,662.88 and income receipts of $76,310. We find this to be compelling proof of the inequity of the rule and hold that the estate of testatrix shall be primarily liable for funeral expenses. Therefore, we conclude that, in computing the elective share, administration, last illness and funeral expenses and debts of decedent are deducted from the gross estate and the fraction representing the share of the electing spouse is applied against the net probate estate.

Accountant next takes the position that all death taxes are properly paid out of residue, none being apportioned out of the elective share. By statute, ultimate liability for inheritance tax is placed on

each transferee in the absence of a contrary intent appearing in the will: Act of June 15, 1961, P. L. 373, art. VII, sec. 718, 72 P.S. §2485-718. The law, however, affords a testator the privilege of shifting, in whole or in part, among the transferees their ultimate liability for inheritance tax: Kleinhans Estate, 454 Pa. 539, 312 A.2d 366 (1973). In Neamand Estate, 456 Pa. 22, 318 A.2d 730 (1974), the Pennsylvania Supreme Court considered the effect of a spouse's election on the tax provision of a will and held that the test was whether testatrix, by clear and unambiguous language, indicated by that provision that her husband's elective share was to be free of all taxes. Item Ninth of the will of testatrix, presently before us, reads as follows:

"I direct the payment by my executor out of the principal of my residuary estate of all inheritance, estate, transfer, succession and death taxes, federal and state, payable by reason of my death, together with interest and penalties thereon. . . ."

The case law clearly holds that a direction to pay "all" death taxes out of the principal of the residuary estate includes taxes payable with regard to both testamentary and extra-testamentary assets: Landor Estate, 416 Pa. 605, 207 A.2d 753 (1965); Widener Estate, 81 D. & C. 106 (O.C. Montg., 1951); York Estate, 75 D. & C. 164 (O.C. Lehigh, 1950). In the instant estate, the applicable tax clause extends the scope of the direction to "all death taxes" by adding "payable by reason of my death," leaving no doubt that testatrix contemplated inclusion of the elective share of her husband. In this regard, the Pennsylvania Supreme Court in Neamand Estate, supra, writes:

" 'every married testator knows, or is presumed to know, that his surviving spouse may elect to take against the will.' " Accordingly, the court holds that testatrix' tax clause clearly and unambiguously expressed her intent that the elective share be included within its provisions.

Finally, accountant requests court approval of the "changing fraction" method in adjusting the interests of respective beneficiaries for partial distributions of principal. In support of this position, accountant cites Gentle Estate, 22 Fiduc. Rep. 352 (O.C. Montg., 1972), and Weaver Trust, 25 Fiduc. Rep. 626 (O.C. Montg., 1975), wherein the Orphans' Court Division of Montgomery County approved the "changing fraction" method. Accountant contends that the authority cited stands for the proposition that this method is required. In Weaver Trust, supra, the court mandated the changing fraction method in an estate where the trust corpus had appreciated more than 100 percent during the course of the making of partial distributions. In Gentle Estate, supra, where, as in the present matter, the court considered the effect of a husband's election after partial advance distributions and where it was not alleged that corpus had either substantially appreciated or depreciated during the period covered by the partial distributions, it was held that the "changing fraction method" while not mandated, was the fair and equitable method of computation. This court, likewise, finds that method to be fair and proper under the circumstances of this case and we so hold.

And now, June 21, 1976, the account is confirmed nisi.